Curt MASSENGALE, O.D., and Derrick Skaggs, O.D., Plaintiffs,

and

Larry Greenhaw, O.D., Philip Miller, O.D., Lenscrafters, Inc., and Pearle Vision, Inc., Plaintiffs–Appellants,

v.

OKLAHOMA BOARD OF EXAMINERS IN OPTOMETRY, V. Duane Moore, O.D., George E. Foster, O.D., and Lloyd Peck, O.D., Defendants–Appellees.

Nos. 93–5039, 93–5108.

United States Court of Appeals,
Tenth Circuit.

July 26, 1994.

Myron L. Dale (Gregory A. Keyser and Steven L. Smith, also of Frost & Jacobs, Cincinnati, OH, Mark K. Blongewicz and Ronald A. White of Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, William J. Calore, Lenscrafters, Inc., Cincinnati, OH, and Kevin J. Rogan, Pearle Health Services, Dallas, TX, with him on the briefs), for plaintiffs-appellants.

Wellon B. Poe, Asst. Atty. Gen., Litigation Div. (Susan B. Loving, Atty. Gen., with him on the brief), and Daniel J. Gamino of Daniel J. Gamino & Associates, Oklahoma City, OK, for defendants-appellees.

Before LOGAN and MOORE, Circuit Judges, and OWEN, District Judge.*

LOGAN, Circuit Judge.

Plaintiffs Larry Greenhaw, O.D., Philip Miller, O.D., Lenscrafters, Inc. (Lenscrafters) and Pearle Vision, Inc. (Pearle), have appealed the district court's dismissal of their underlying complaint filed against the Oklahoma Board of Examiners of Optometry (Board) and the individual Board members Duane Moore, O.D., George E. Foster, O.D., and Lloyd Peck, O.D., sued in their individual and official capacities (No. 93–5039). Plaintiffs' federal claims were dismissed as unripe for failure to exhaust state administrative remedies. The district court also invoked the abstention doctrine of *Railroad Comm'n*

---

* The Honorable Richard Owen, Senior United States District Judge, United States District Court for the Southern District of New York, sitting by designation.

*v. Pullman Co.,* 312 U.S. 496, 500–01, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941), to afford Oklahoma state courts the first opportunity to interpret and apply the relevant Oklahoma statutes.

Shortly after the dismissal, plaintiffs sought injunctive relief to prevent any Board action pending resolution of their appeal, and a month later filed motions pursuant to Fed. R.Civ.P. 15(d) and 60(b) to amend their complaint and for relief from judgment. The district court granted the injunction but denied the other motions. Plaintiffs have appealed those adverse procedural rulings (No. 93–5108). The two appeals were consolidated for oral argument in this court.

The issues on appeal in No. 93–5039 are whether the district court correctly determined that plaintiffs' claims were not ripe for failure to exhaust their administrative remedies, or, alternatively, that abstention was justified to permit state proceedings to first interpret "fundamental and important" Oklahoma state law questions. The issues in appeal No. 93–5108 are whether the district court abused its discretion in denying Rule 60(b) relief and in refusing to allow plaintiffs to amend their complaint pursuant to Rule 15(d).

## I

Plaintiff-optometrists Greenhaw and Miller[1] have contracts with Lenscrafters and Pearle, respectively, to sublease space for their office practice near those retail optical locations. The Board alleges that these business arrangements are in violation of Oklahoma law, *see* Okla.Stat.Ann. tit. 59, §§ 596, 944, as interpreted by the Attorney General of Oklahoma.

The Board asked three of the individual plaintiffs to appear informally before the Board in November 1990. The stated purpose of the meeting was to discuss the optometrists' business agreements, including subleases, with optical establishments such as Lenscrafters. Apparently at that time the plaintiff-optometrists all had contracts with

Lenscrafters. The Board took no action following that meeting.

In May 1991, the Board asked these optometrists to meet again with the Board. The letter indicated that the optometrists would not be disciplined for any violations of state law that might have already occurred regarding sublease arrangements, but that penalties or discipline could be imposed if suspected violations continued after the proposed May 17 meeting. Plaintiffs Greenhaw, Massengale and Skaggs did not attend the meeting.

A third meeting followed in July 1991, during which several optometrists appeared and were questioned regarding the nature of their relationships with Lenscrafters. Board members expressed concern about possible violations of state law, but did not recommend or take any disciplinary action. The Board then solicited an opinion from the Oklahoma Attorney General. That opinion letter stated that under Okla.Stat.Ann. tit. 59, §§ 593, 596 and 944 "a licensed optometrist may not lease or sublease office space from a retail merchandiser, including a retail optical supplier or seller." I Appellants' App. (No. 93–5108) 33. The Board then mailed notice of the opinion letter to all licensed optometrists in the state requesting compliance with its conclusions by May 14, 1992.

When plaintiff-optometrists did not comply, the Board voted at its May 14 meeting to conduct disciplinary hearings. Before those were held the three original plaintiff-optometrists, in addition to Lenscrafters and Pearle, filed suit in federal court against the Board. The complaint alleged conspiracy to restrain trade and to monopolize, equal protection and procedural due process violations (based primarily on the bias and self-interest of Board members), claims that the Oklahoma statute was void for vagueness and violated their right to free speech, and assertions that the Oklahoma statute had been misinterpreted and misapplied. Plaintiffs asked for declaratory and injunctive relief.

When suit was filed, the Board had not yet issued a formal disciplinary complaint, al-

---

1. Curt Massengale, O.D. and Derrick Skaggs, O.D. were sublessees of Lenscrafters and original plaintiffs in the district court action, but are not parties to this appeal.

though a hearing date had been scheduled.[2] The Board withheld further action during the pendency of the district court suit. When Miller entered into a lease agreement with Pearle, the court granted a joint motion by all parties to permit him to intervene. Four days later the district court dismissed the case.

Following dismissal, the Board reinstituted disciplinary action against the four plaintiff-optometrists. Plaintiffs moved in the district court for a stay of those proceedings, and when formally notified of impending disciplinary action, plaintiffs sought to disqualify the Board members for alleged bias. At a March 1993 meeting, the plaintiff-optometrists questioned each of the three Board members. Thereafter each Board member in turn was voted on by a quorum of the other two Board members concerning possible bias. No Board members were disqualified. *See* Okla.Stat.Ann. tit. 75, § 316 (outlining procedures for disqualification hearing).

After plaintiffs' failed attempt to disqualify the Board members, they moved for Rule 60(b) relief, and under Rule 15(d) to amend their complaint, arguing that they had adequately exhausted their administrative remedies by using the state's disqualification procedures. During the motion's pendency, the Board appointed an independent hearing officer, as authorized under the Oklahoma Administrative Procedures Act (OAPA), to hear the case and provide findings of fact and conclusions of law. *See* Okla.Admin.Code (OAC) 505:1-7-7. The district court granted the plaintiff-optometrists' motion to stay that administrative hearing pending disposition of this appeal, but denied the Rule 60(b) and 15(d) motions.

## II

### A

■ The threshold question before us is whether plaintiffs should be required to exhaust their state administrative remedies before being allowed into federal court. The

exhaustion requirement is not jurisdictional, but involves the exercise of judicial discretion. *Rocky Mountain Oil & Gas Ass'n v. Watt,* 696 F.2d 734, 743 n. 12 (10th Cir.1982). We review the district court's dismissal under the exhaustion doctrine for abuse of discretion. *Park County Resource Council, Inc. v. United States Dep't of Agric.,* 817 F.2d 609, 619 (10th Cir.1987).

■ The general rule is to require parties to exhaust their administrative remedies before seeking judicial relief. The exhaustion requirement is judge-made and several exceptions to the doctrine have developed. The Supreme Court recently summarized the circumstances under which exhaustion is excused. *McCarthy v. Madigan,* —— U.S. ——, ——–––—, 112 S.Ct. 1081, 1087–88, 117 L.Ed.2d 291 (1992). First, if pursuing an administrative remedy will impair an individual's ability to later seek judicial review, the exhaustion requirement may be excused—as when the likelihood of obtaining an administrative resolution within a reasonable time will result in prejudice to the individual.

Second, exhaustion is excused when the administrative remedy is inadequate—as when the agency lacks the "institutional competence," *id.* at ——, 112 S.Ct. at 1088 (citing *Moore v. City of East Cleveland,* 431 U.S. 494, 497 n. 5, 97 S.Ct. 1932, 1935 n. 5, 52 L.Ed.2d 531 (1977) (plurality opinion in which the issue concerned the constitutionality of a statute)), or is without authority to grant the relief sought, *see, e.g., McNeese v. Board of Educ.,* 373 U.S. 668, 675, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963) (in school integration setting, students need not seek relief from public school administration when ultimately the state attorney general would be called upon to file suit). This exception also includes those instances when "the adequacy of the administrative remedy [is] for all practical purposes identical with the merits of [plaintiffs'] lawsuit." *Gibson v. Berryhill,* 411 U.S. 564, 575, 93 S.Ct. 1689, 1696, 36 L.Ed.2d 488 (1973).

---

**2.** Apparently a formal notice of disciplinary hearing did not actually issue until after the plaintiffs'

federal complaint had been dismissed.

The third basis for excusing exhaustion is when the "administrative body is shown to be biased or has otherwise predetermined the issue before it." *McCarthy,* —— U.S. at ——, 112 S.Ct. at 1088. Plaintiffs assert that their case falls within either the second or third exception.

B

■ At this early stage in the administrative process, plaintiff-optometrists have not availed themselves of the procedural safeguards contained in the statute and the OAPA that they argue are inadequate. They have not established a factual basis for their assertions that pursuing the administrative process requires them to waive their "right to a fair and impartial hearing." Appellants' Br. (No. 93–5039) at 14. We are unable to identify any evidence in the record establishing how the fairness of the proscribed administrative procedures has been undermined.

The Board is required by statute to follow the hearing procedures in the OAPA with regard to license revocation and suspension activity. Okla.Stat.Ann. tit. 59, § 585(A)(5). The OAPA requires reasonable notice and a hearing, Okla.Stat.Ann. tit. 75, § 309, and contains detailed provisions for the disqualification of an agency member or hearing officer, *id.* § 316. Agency members and hearing officers must recuse if they are unable to be fair and impartial, and a party may also file an affidavit requesting disqualification. *Id.* The Board is required to promptly convene and decide disqualification issues. *Id.;* OAC 505:1–7–14. Apparently mandamus is available to disqualify a Board member, *see* OAC 505:1–7–14; the Board also has the option of appointing a hearing officer to conduct hearings. OAC 505:1–7–7(a). Judicial review of agency decisions is available. Okla.Stat.Ann. tit. 75, § 318. The reviewing court or the agency may stay enforcement of the decision to be reviewed. *Id.* § 319. These statutory and procedural mechanisms provide several layers of internal and external review of a Board decision as well as protection to the plaintiff-optometrists from immediately suffering the consequences of an adverse ruling. Therefore, we cannot agree that the reme-

dies available to the plaintiff-optometrists are inherently inadequate.

■ We are also unpersuaded by the plaintiff-optometrists' argument that merely seeking disqualification of the Board satisfied their obligation to exhaust their administrative remedies. An adverse ruling on that request is not per se evidence that the Board is biased. Plaintiff-optometrists must actually participate in the administrative process until such time as the steps summarized above have been completed or some concrete action occurs establishing that their continued participation is futile—*e.g.,* the Board or hearing officer refuses to comply with statutory obligations. The available administrative remedies are adequate and, until exhausted, may not be bypassed.

C

■ The bias exception to the exhaustion requirement requires a somewhat different analysis. Plaintiffs have alleged that they cannot receive an impartial hearing because the Board has been historically opposed to the business relationship these plaintiff-optometrists have with Lenscrafters and Pearle, and because this particular set of Board members has demonstrably prejudged the issues and possesses an economic stake in the proceedings.

As evidence on the prejudgment question, plaintiffs attribute to Board member Peck the statement, "I can give a fair hearing [in the absence of conducting disciplinary proceedings] based on the information that I have at hand right now." II Appellants' App. (No. 93–5108) 659; *see also* I Appellants' App. (No. 93–5108) 259–60, 278–79. Peck, however, voluntarily recused himself from the determination of any disciplinary action, despite the fact that a quorum of his fellow Board members had previously refused to disqualify him for bias. Further, the Board has invoked the provisions of OAC 505:1–7–7 and appointed an independent hearing officer to conduct the disciplinary hearing. Plaintiffs have produced no tangible evidence that they will be the victims of an unfair and impartial hearing.

Plaintiffs argue that their case is governed by *Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). *Gibson* involved proceedings against certain Alabama optometrists by that state's licensing board. Those optometrists demonstrated that exhaustion of the administrative process would be futile because of bias of both the Alabama board members and any replacement members that might be appointed to that board. The facts of the instant case differ significantly from those in *Gibson.* Even though the challenged statutory restrictions in Alabama were similar to those in Oklahoma—regulating the business relationships between optometrists and retail optical establishments—the optometrists in *Gibson* were without viable options to remedy a potentially biased state disciplinary process. The Alabama law had no procedures for challenging the bias of board members; the OAPA provides mechanisms for the disqualification of Board members and the appointment of an independent hearing officer. The Alabama Optometric Association required its members to be in private practice, effectively precluding nearly half of the then licensed optometrists in the state from participating in the regulation of their own profession, *see Berryhill v. Gibson,* 331 F.Supp. 122, 125 (M.D.Ala. 1971); this is not the case in Oklahoma.

The Oklahoma Board has proceeded with caution and has been diligent in refraining from action during the pendency of plaintiffs' federal suit. The Board did not oppose plaintiffs' request for injunction pending the outcome of this appeal. The Board has expressed its willingness to stay enforcement of any adverse decision until state court appeals are exhausted.

The record does not support the conclusion that the Board seeks to utilize the disciplinary process as a vehicle to vindicate political, personal, or professional objectives. Instead, the record shows that Board members are sensitive to the potential negative economic impact of disciplinary proceedings and have proceeded in a manner designed to reduce economic risk to the plaintiff-optometrists. We agree with the district court that bias has not been established based upon the Board's historic position.

Plaintiffs assert that the Board members have an economic stake in the outcome of the disciplinary proceeding which precludes an unbiased hearing process. The Board members have basically "traditional" optometry practices, without any business affiliation with a retail establishment such as Lenscrafters or Pearle. Plaintiffs' argument assumes that Board members will decide on the basis of their personal economic interests. Particularly in view of the Board's appointment of an impartial hearing officer and the availability of state court review of any evidence of bias, there is nothing to suggest that the disciplinary hearings will be influenced by Board members' inappropriate economic motivation.

Plaintiff-optometrists have not shown themselves to be within an exception to the exhaustion requirement and therefore the district court did not abuse its discretion in dismissing their complaint. Under these circumstances, requiring exhaustion will best serve the "purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy,* —— U.S. at ——, 112 S.Ct. at 1086.

### III

We turn now to appeal No. 93–5108, from the district court's denial of Rule 60(b) relief as it pertains to the exhaustion issue. We review the denial of Rule 60(b) relief for abuse of discretion. *Adams v. Merrill Lynch Pierce Fenner & Smith,* 888 F.2d 696, 702 (10th Cir.1989). Rule 60(b) relief is only appropriate under extraordinary circumstances. *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863–64, 108 S.Ct. 2194, 2204–05, 100 L.Ed.2d 855 (1988). Plaintiffs have read the district court's order too narrowly when they assert that by requesting disqualification of Board members they have satisfied the requirement to exhaust their administrative remedy. Because the Board ultimately appointed a hearing officer to handle the disciplinary hearing, plaintiffs obtained at least partial relief in the nature of that which they originally desired. The Board's denial of plaintiffs' disqualification request did not present the type of extraordinary circumstances that give rise to

Rule 60(b) relief. Thus, the denial was not an abuse of discretion.

■■■■ We also review the denial of a Rule 15(d) motion to file an amended complaint for abuse of discretion. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993). Here plaintiffs sought to amend their complaint after judgment. The plaintiffs' circumstances are substantially unchanged since the district court originally ordered dismissal for failure to exhaust administrative remedies. Denial of plaintiffs' disqualification request does not constitute the type of changed circumstance to justify allowing an amended complaint. That is particularly so in light of the Board's subsequent decision to appoint a neutral attorney hearing officer. Thus, denial of the Rule 15(d) motion was a proper exercise of discretion.

## IV

Plaintiffs Lenscrafters and Pearle are not properly parties to the Oklahoma disciplinary process. Okla.Stat.Ann. tit. 75, §§ 250.3(8) and 316. They may seek a remedy in state court, however, for declaratory relief on their claims directly challenging the administrative rules governing that process. *Id.* § 306. *See also Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 247, 73 S.Ct. 236, 242, 97 L.Ed. 291 (1952) (anticipatory judgment by federal court to frustrate action of a state agency under state law is inappropriate, and relief should be pursued in state court). Thus, their presence as plaintiffs and appellants does not change our analysis.

Plaintiffs have made no real argument on appeal that their antitrust claims should have survived dismissal. At any rate the federal antitrust claims in both their complaint and proposed amended complaint are specious. "Federal antitrust laws do not apply to anticompetitive acts that derive their authority from the state in the exercise of its sovereign powers." *Jacobs, Visconsi & Jacobs Co. v. City of Lawrence*, 927 F.2d 1111, 1120 (10th Cir.1991) (citing *Parker v. Brown*, 317 U.S. 341, 350, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1943)).

Because we agree with the district court that this case was properly dismissed for failure to exhaust administrative remedies we need not reach the abstention issue, the district court's additional holding, based on the *Pullman* doctrine.

Plaintiffs argue that their constitutional claims are not dependent upon an interpretation of Oklahoma law and therefore abstention is improper. But we note that they ask us to certify to the Oklahoma Supreme Court several important issues of state law. They want the state court to determine whether an entity exclusively engaged in the sale of prescription eyeware and related accessories is a "retail mercantile establishment" within Okla.Stat.Ann. tit. 59, § 596, and whether under that statute optometrists may lawfully sublease office space for their practice if the space is not "in" the retail establishment. They want the state court to determine whether under Okla.Stat.Ann. tit. 59, § 944 the Board can exercise jurisdiction over an optical retailer to prohibit subleases to optometrists if the space is not "in" a retail store, and whether that statute can be applied to the conduct of an optometrist. The answers to these questions may obviate the need to decide the constitutional issues plaintiffs raised in their federal complaint.

■■■■ Certification of state law questions is not automatic, of course, but discretionary. We generally will not certify questions to a state supreme court when the requesting party seeks certification only after having received an adverse decision from the district court. *See Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir.1988). We are satisfied that certifying these questions to the Oklahoma Supreme Court will not expedite resolution of the parties' disputes. When optometrists Massengale and Skaggs did not join in this appeal, administrative hearings in their disciplinary proceedings were scheduled for May 4, 1993, and presumably disciplinary hearings have been conducted. Those hearings, and similar proceedings involving the other plaintiff-optometrists, would provide a better forum from which the Oklahoma courts can interpret Oklahoma law based upon a full development of the facts without

resulting in prejudicial delay. Plaintiffs' motion for certification is denied.

AFFIRMED.