**Gladys V. HARVEY, Plaintiff,**

v.

**YELLOW FREIGHT SYSTEM, INC. and Protective Insurance Company, Defendants.**

No. 87–1205–C.

United States District Court, D. Kansas.

Aug. 27, 1996.

Timothy J. King, Speth, King & Riedmiller, Wichita, KS, for Gladys V. Harvey, plaintiff.

Gladys V. Harvey, Hot Springs, AR, pro se.

Scott R. Ast, Turner & Boisseau, Chartered, Wichita, KS, Brian C. Wright, Turner & Boisseau, Chartered, Great Bend, KS, for Yellow Freight System, Inc., defendant.

## MEMORANDUM ORDER

CROW, District Judge.

On June 18, 1986, Gladys V. Harvey, while pulling a U–Haul trailer with her Jeep Cherokee as she crossed the state of Kansas on I–70 en route to Tennessee, was struck from behind by a truck owned by Yellow Freight System, Inc. At the time of the collision, Yellow Freight's truck was traveling at approximately 57 m.p.h.; the plaintiff was traveling at approximately 40 m.p.h. The collision caused extensive damage to the U–Haul trailer, crushed the items inside the U–Haul, and pushed the tongue of the U–Haul trailer through the tail-gate of the Jeep. The plaintiff, who designed doll dresses and sold those designs under the name of Virginia Lakin, was moving to Tennessee with the apparent intent to conduct her business in partnership with her daughter and son-in-law. Harvey sued Yellow Freight to recover for damages she allegedly sustained as a result of the collision. Specifically, Harvey claimed that she had sustained brain damage as a result of the collision.

In 1990, after a three week trial, the jury returned a verdict in which they found none of the parties to be at fault. In a motion for new trial, Harvey contended that the jury's verdict was contrary to the instructions of the case as well as the great weight of evidence presented in trial. On December 19, 1990, the court denied Harvey's motion. *See Harvey v. Yellow Freight*, No. 87–1205–C, 1990 WL 251930 (D.Kan. Dec. 19, 1990). A copy of that opinion is attached to this memorandum and order. Harvey filed no appeal to the Tenth Circuit.

Although she did not file an appeal, this case did not end for Harvey. Harvey has apparently made her collision with the Yellow Freight and the loss at trial one of the focal points of her existence. Following the jury's verdict, Harvey, now acting *pro se*,[1] has embarked on a quest to collaterally attack their decision in one form or another. For example, in direct contravention of the rules of this court, *see* D.Kan.Rule 123,[2] Harvey apparently made repeated attempts to contact the jurors rendering the adverse verdict in her case, ostensibly in an effort to attack the judgment entered in this case. Based upon repeated instances of such prohibited contact, the court sent a final written admonition to Harvey again explaining the rules of this court and that the court would treat any further contact with jurors for the purpose of discussing the case as an act of contempt. The court also sent copies of that letter to the jurors in the unhappy event that Harvey chose to ignore that final admonition. Copies of that correspondence are attached to this memorandum and order. Since that admonition, none of the jurors have reported any further attempts by Harvey to contact them.

In 1994, the Tenth Circuit rejected Harvey's request for mandamus. A copy of that order is attached to this opinion. Harvey has also apparently sought relief from other courts, including the Kansas Supreme Court, which have no jurisdiction to review the final decisions of this court.

1. Harvey was represented by counsel throughout the time of trial. Harvey's trial counsel also filed the motion for new trial on her behalf.

2. Effective October 1, 1995, D.Kan.Rule 123 was renumbered without substantive change to D.Kan.Rule 47.1.

This case comes before the court upon Harvey's April 11, 1996, letter to the Clerk of the Court, which the court has treated as a motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b). In that letter, Harvey contends that she has accumulated sufficient evidence to prove that she was incompetent and not of sound mind during 1990. As a result of her drop in I.Q., she was awarded complete disability by the Social Security Administration.[3] Harvey contends that her mental condition during 1990 and subsequent years justifies relief from the adverse judgment entered in 1990.

Yellow Freight opposes Harvey's motion. Yellow Freight contends that this is not the "extraordinary situation" justifying relief under Rule 60(b). Yellow Freight contends that most of the information concerning her alleged brain injuries which Harvey presents now in support of her Rule 60(b) motion was available at the time of trial and that Harvey should not be permitted to relitigate the same issues decided by the jury. Yellow Freight also notes that at trial, Harvey was represented by "very competent" counsel.

Yellow Freight contends that the "new" information provided by Harvey is insufficient to warrant the relief that she seeks. The information provided by Harvey indicates that her I.Q. dropped from "genius" to that of an average or above average person does not demonstrate that she is incompetent.

Yellow Freight also suggests that this court had the opportunity to view Harvey personally during her testimony at trial. Because the court did not appoint a guardian ad litem at that time, Yellow Freight contends that such a fact conclusively proves that she

was not incompetent to sue or to testify as a witness. Even if she was incompetent, Yellow Freight argues that such incompetency did not affect the outcome of her trial.

In a letter which the court has treated as a reply brief, Harvey indicates, *inter alia*, that she recently underwent five hours of neuropsychological testing. Harvey concedes that "this does not bear on my compettence (sic) in 1990 but it most certainly relate (sic) to my inability to file Rule 60(b)(6) sooner as Per 'Reasonable time' in filing." Harvey also contends that her trial counsel were incompetent and failed to advance arguments critical to her case.

### Fed.R.Civ.P. 60

"Rule 60(b) provides a procedural avenue whereby, in appropriate circumstances, a party may assert a direct attack on a final judgment or order." *In re Gledhill,* 76 F.3d 1070, 1082 (10th Cir.1996). Federal Rule of Civil Procedure 60 has been referred to as "the grand reservoir of equitable power to do justice in a particular case." *Pierce v. Cook & Co.,* 518 F.2d 720, 722 (10th Cir.1975) (en banc) (quoting *Radack v. Norwegian Am. Line Agency, Inc.,* 318 F.2d 538, 542 (2d Cir.1963)), *cert. denied,* 423 U.S. 1079, 96 S.Ct. 866, 47 L.Ed.2d 89 (1976). "Relief under Rule 60(b) is extraordinary and limited to certain exceptional circumstances." *Nutter v. Wefald,* 885 F.Supp. 1445, 1449 (D.Kan. 1995) (citing *Massengale v. Oklahoma Board of Examiners in Optometry,* 30 F.3d 1325, 1330 (10th Cir.1994); *Bud Brooks Trucking, Inc. v. Bill Hodges Trucking Co. Inc.,* 909 F.2d 1437, 1440 (10th Cir.1990)). "A litigant shows exceptional circumstances by satisfying one or more of Rule 60(b)'s six grounds."[4] *Van Skiver v. United States,* 952

---

3. In another letter received from Harvey on April 18, 1996, a copy of which is attached to this memorandum and order, Harvey claims that as a result of her collision with the Yellow Freight truck, her I.Q. dropped from 133 to 112. In that same letter, Harvey describes herself as the "village idiot," driven only by her desire to win her lawsuit against Yellow Freight. Harvey also indicates that in light of her current mental condition, she essentially does not care if she were placed in prison for contempt of court.

4. The exceptional circumstances enumerated in Rule 60(b) are:

"On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has

F.2d 1241, 1243–44 (10th Cir.1991), *cert. denied,* 506 U.S. 828, 113 S.Ct. 89, 121 L.Ed.2d 51 (1992).

 "A rule 60(b) motion triggers consideration of the established policy in favor of final judgments." *Nutter,* 885 F.Supp. at 1450. *See Lee v. Village of River Forest,* 936 F.2d 976, 978 (7th Cir.1991) ("strong policy favoring the finality of judgments"). Rule 60(b) " 'seeks to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the "incessant command of the court's conscience that justice be done in light of *all* the facts." ' " *Cessna Finance Corp. v. Bielenberg Masonry Contracting, Inc.,* 715 F.2d 1442, 1444 (10th Cir.1983) (quoting *Seven Elves, Inc. v. Eskenazi,* 635 F.2d 396, 401 (5th Cir.1981)) ((quoting in turn *Bankers Mortgage Co. v. United States,* 423 F.2d 73, 77 (5th Cir.), *cert. denied,* 399 U.S. 927, 90 S.Ct. 2242, 26 L.Ed.2d 793 (1970))). The district court has substantial discretion in deciding a Rule 60(b) motion. *Pelican Production Corp. v. Marino,* 893 F.2d 1143, 1145–46 (10th Cir.1990). The court abuses its discretion when its actions are arbitrary, capricious, whimsical, without reason, or biased. *Id.*

 "Not a substitute for a direct appeal, a rule 60(b) motion addresses matters outside the issues on which the judgment was entered." *Nutter,* 885 F.Supp. at 1450 (citing *Brown v. McCormick,* 608 F.2d 410, 413 (10th Cir.1979)). "It is not the opportunity for the court to revisit the issues already addressed in the underlying order or to consider arguments and facts that were available for presentation in the underlying proceedings." *Nutter,* 885 F.Supp. at 1450 (citing *Van Skiver v. United States,* 952 F.2d at 1243).

### Analysis

 Based upon the court's independent recollection of the trial, as well as all of the arguments and information submitted by Harvey, the court concludes that she is not entitled to relief pursuant to Rule 60(b). During the trial, Harvey's claims of brain damage were hotly disputed. *See Harvey v. Yellow Freight,* 1990 WL 251930 at *3–4. Although Harvey claims she can now offer proof that she has in fact suffered brain damage, her offer comes too little and too late.[5] The time for taking an appeal expired in 1991, over five years ago, and this attack

been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided in Title 28, U.S.C., § 1655, or to set aside a judgment for fraud upon the court. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure of obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action."

5. Assuming, *arguendo,* that Harvey had filed this motion for relief within one year of the time judgment was entered, none of the "newly discovered evidence" proffered by Harvey would have warranted relief from judgment under Rule 60(b)(2). *See Graham v. Wyeth Laboratories,* 906 F.2d 1399, 1416 (10th Cir.1990) (For newly discovered evidence to provide a basis for a new trial under Fed.R.Civ.P. 60(b)(2), movant must demonstrate (1) the evidence was newly discovered since the trial; (2) movant was diligent in discovering the new evidence; (3) the newly discovered evidence could not be merely cumulative or impeaching; (4) the newly discovered evidence had to be material; and (5) that a new trial, with the newly discovered evidence would probably produce a different result.).

Nor does the "new" evidence presented by Harvey or any of the arguments she advances demonstrate the existence of an extraordinary circumstance warranting relief from judgment. *See In re Gledhill,* 76 F.3d at 1081–82 ("Newly discovered evidence is grounds for relief under Rule 60(b)(2), not Rule 60(b)(6). Compare Fed. R.Civ.P. 60(b)(2) ("newly discovered evidence which by due diligence could not have been discovered in time to move for new trial under Rule 59(b)") with Fed.R.Civ.P. 60(b)(6) ("any other reason justifying relief from the operation of the judgment"). Relief under Rule 60(b)(6) may not be premised on one of the specific grounds enumerated in Rule 60(b)(1)–(5).").

by Harvey is little more than an attempt to relitigate the same underlying action.

Harvey's contention that she was or is now incompetent is apparently intended to serve two overlapping purposes. First, if she was incompetent at the time of trial, Harvey apparently contends that judgment should not have been entered against her. Second, her "incompetency" in 1990 or in the years thereafter excuses her delay in seeking relief from judgment at an earlier point in time. All of the evidence submitted by her, considered singularly and in combination, is insufficient to warrant any further inquiry as to her competency in 1990 or in the years thereafter, or to grant the relief she requests.

The fact that Harvey may have been suffering from some degree of brain damage in 1990 does not automatically demonstrate that she was then or is now incompetent. The fact that Harvey may now be receiving social security disability benefits is obviously not conclusive proof that she is incompetent—it is only evidence that she is disabled within the meaning of the Social Security Act. Even by her own admission, Harvey's I.Q. is still above average. Although a high I.Q. (or for that matter a low I.Q.) does not automatically prove competency (or incompetency), in this case it is simply additional evidence supporting the court's conclusion that Harvey was not incompetent as she appeared before the court and jury in 1990.

Harvey's repeated claims that she is unable to analyze problems and formulate solutions to those problems is belied by the very documents she has apparently personally drafted and submitted in this case. Although Harvey's pleadings contain some typographical errors, they generally demonstrate normal analytic skills and appropriate grammar, language usage and syntax. Although unsuccessful in obtaining the relief she seeks, Harvey's pleadings generally advance arguments crafted in an intelligible fashion.

Most importantly, the court concludes that the interests of justice are best served by denial of her request for relief. The court independently recalls the three week trial in this matter. Harvey did not sit at the plaintiff's table throughout the trial. Harvey's counsel informed the court that this was for Harvey's benefit as discussions about her injuries would cause her unnecessary stress and anxiety. Harvey did, however, testify in her own case-in-chief. The court independently recalls that her answers to questions during both direct and cross-examination were responsive. Nothing in her demeanor, appearance or testimony suggested that she was incapable of understanding the nature and consequences of the trial, or more generally, of her lawsuit against Yellow Freight. Nor was the court concerned that Harvey was otherwise incapable of perceiving accurately, interpreting or responding appropriately to the world around her. None of the numerous medical personal who treated or examined Harvey who testified at trial ever suggested that her brain injury rendered her incompetent. Harvey was undoubtedly a competent witness. See United States v. Torain, 886 F.Supp. 776, 779–80 (D.Kan.1995) (discussing competency requirements of witness under the Federal Rules of Evidence).

Although the plaintiff's evidence at trial suggested that the collision with the Yellow Freight truck caused permanent brain damage, there was also substantial evidence casting serious doubt on that claim. In fact, there was substantial evidence suggesting that Harvey was feigning or exaggerating the degree of her injuries in an attempt to obtain more money from Yellow Freight. See Harvey v. Yellow Freight, 1990 WL 251930 at *3–4.

In sum, the court is satisfied that Harvey was competent to protect her own interests in her lawsuit against Yellow Freight at the time of trial and that her condition thereafter did not preclude her from seeking relief from judgment at an earlier point in time.

In regard to Harvey's attacks on the adequacy of her representation at trial, the court simply notes that her counsel, apparently knowledgeable and experienced in representing persons claiming to have suffered brain

injuries, represented her in a reasonable, professional and competent manner. At no point was the court concerned that Harvey's interests were not adequately represented by her counsel. Harvey's post hoc challenges to their trial strategies are simply unavailing.[6] The fact that the jury returned a verdict in favor of Yellow Freight does not demonstrate that she was inadequately represented. In every lawsuit one side typically "wins" and the other side "loses." That ineluctable consequence of our adversarial process does not automatically mean that the "losing" side's attorney was incompetent.

It also deserves mention that the Supreme Court has made it clear that parties, having chosen an attorney as their representative, are to be held accountable for the acts or omissions of their attorney. *See Pioneer Investment Services v. Brunswick Associates,* 507 U.S. 380, 396–97, 113 S.Ct. 1489, 1499, 123 L.Ed.2d 74 (1993). Any recourse against her attorneys for their alleged malpractice must be brought in a timely, separate action against them, not Yellow Freight.

In sum, the court concludes that Harvey is not entitled to relief pursuant to Rule 60(b). Although the plaintiff will undoubtedly see this decision as unfair, the court has carefully balanced the competing interests in finality against the court's interest to see that justice is done. Based upon its consideration of all of the arguments and materials submitted, the court believes that the interests of justice are best served by the denial of Harvey's request for relief.

IT IS THEREFORE ORDERED that Harvey's letter, treated as a motion for relief pursuant to Fed.R.Civ.P. 60(b), is denied.

---

**6.** In her reply, Harvey contends, *inter alia,* that her lawyers were incompetent for failing to "deposition" her daughter. A video-taped deposition of Harvey's daughter was introduced by Yellow Freight at trial. The deposition testimony of Harvey's daughter, as well as the deposition testimony of Harvey's son-in-law, was compelling evidence that Harvey's complaints related to her brain injury were exaggerated. In light of the other evidence admitted at trial, plaintiff's counsel's apparent decision to refrain from attempting to rebut this testimony by recalling Harvey to attack her daughter and son-in-law was not an unreasonable trial strategy.

---

APPENDIX

Gladys V. HARVEY, Plaintiff,

v.

YELLOW FREIGHT SYSTEM, INC.

and

Protective Insurance Company, Defendants.

No. 87–1205–C.

United States District Court, D. Kansas.

Dec. 19, 1990.

Gladys Harvey, Adel, Iowa, Timothy J. King, Stinson, Lasswell & Wilson, Wichita, Kan., Frank Watson, Jr., John J. Gajdel, Des Moines, Iowa, for plaintiff.

John Hurley, Turner & Boisseau, Wichita, Kan., for defendants.

MEMORANDUM ORDER

CROW, District Judge.

This matter comes before the court upon the plaintiff's motion for new trial. On June 18, 1986, Gladys V. Harvey, while pulling a U–Haul trailer with her Jeep Cherokee as she crossed the state of Kansas on I–70 en route to Tennessee, was struck from behind by a truck owned by Yellow Freight System, Inc. At the time of the collision, Yellow Freight's truck was traveling at approximately 57 m.p.h.; the plaintiff was traveling at approximately 40 m.p.h. The collision caused extensive damage to the U–Haul trailer, crushed the items inside the U–Haul, and pushed the tongue of the U–Haul trailer through the tail-gate of the Jeep. The plaintiff, who designed doll dresses and sold those designs under the name of Virginia Lakin, was moving to Tennessee with the apparent intent to conduct her business in partnership with her daughter and son-in-law. Harvey sued Yellow Freight to recover for damages she allegedly sustained as a result of the

collision. Plaintiff claimed that she had sustained brain damage as a result of the collision.

After a three week trial, the jury returned a verdict in which they found none of the parties to be at fault. The plaintiff contends that the jury verdict is contrary to the instructions of the case as well as the great weight of evidence presented in trial. Yellow Freight, in an untimely response,[1] responds that the verdict is supported by the weight of the evidence and that the verdict is consistent with the jury instructions.

After careful consideration of the law, the evidence and the jury instructions, the court denies the plaintiff's motion for new trial.

## MOTION FOR NEW TRIAL

Fed.R.Civ.P. 59(a) authorizes the court to grant a new trial to all or any of the parties on all or part of the issues "in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."[2] A trial court has broad discretion in deciding whether to grant or deny a motion for a new trial. *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984). In considering the motion, the court should "exercise judgment in preference to the automatic reversal for 'error' and ignore errors that do not affect the essential fairness of the trial." *McDonough Power Equipment,* 464 U.S. at 553, 104 S.Ct. at 848. The motion may be granted where the court believes the verdict is against the weight of the evidence or prejudicial error has occurred. *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631, 637 (10th Cir.1988).

When the issue concerns the verdict being against the weight of the evidence, the trial court in exercise of its discretion reviews the evidence. *Black v. Hieb's Enterprises, Inc.,* 805 F.2d 360, 363 (10th Cir.1986). The focus

is upon whether the evidence is clearly, decidedly, or overwhelmingly against the weight of the evidence. *Continental Cas. Co. v. Southwestern Bell Telephone Co.,* 860 F.2d 970, 972 (10th Cir.1988), cert. denied, 489 U.S. 1079, 109 S.Ct. 1530, 103 L.Ed.2d 836 (1989).

Because of the sanctity attached to jury verdicts, courts do not lightly overturn them. *MidWest Underground Storage, Inc. v. Porter,* 717 F.2d 493, 502 (10th Cir.1983). In determining whether a new trial is appropriate, the trial court does not sit merely as an additional juror. *de Perez v. Hospital del Maestro,* 910 F.2d 1004, 1006 (1st Cir.1990). It must have more than the belief it would have reached a different verdict, the trial court must " 'feel that the jury quite clearly reached a seriously erroneous result in spite of the clear weight of the evidence.' " *Leichihman v. Pickwick Intern.,* 814 F.2d 1263, 1267 (8th Cir.), cert. denied, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987) (quoting *Leichihman v. Pickwick International, Inc.,* 589 F.Supp. 831, 834 (D.Minn.1984), aff'd, 814 F.2d 1263 (8th Cir.1987)). See *Skinner v. Total Petroleum, Inc.,* 859 F.2d 1439, 1443 (10th Cir.1988).

The heart of the plaintiff's motion centers on the fact that Yellow Freight conceded that its truck driver was negligent. The plaintiff contends that the evidence was clear that she suffered an injury as a result of the collision. The plaintiff contends that the jury's finding that neither party was at fault cannot be squared with this concession and the "fact" that she suffered physical injury. The plaintiff's argument is based in part on the erroneous assumption the terms "negligence" and "fault" are synonymous. While it is true the defendant conceded that its driver was negligent, Yellow Freight did not concede that its driver caused any of the damages for which Harvey sought compensation. Jury instruction number thirteen states in relevant part:

The defendant admits that Darrell Hartkemeyer was negligent, but denies that his

---

1. The court directs Yellow Freight's attention to D.Kan.Rule 206(b).

2. Contrary to the defendant's argument, the plaintiff's motion is not in "essence and in fact" a motion for judgment notwithstanding the ver-

dict. The defendant's attempt to convert the plaintiff's motion for a new trial into a motion for JNOV is unsupported by the Federal Rules of Civil Procedure or any case interpreting the rules.

negligence was the sole cause of the collision and that the collision was the underlying cause of any of the plaintiff's injury.

Instruction number twenty-seven states in pertinent part:

Negligence is the lack of ordinary care. It is the failure of a person to do something that an ordinary person would do, or the act of a person in doing something that an ordinary person would not do, measured by all the circumstances then existing.

A party is at fault when he is negligent and that negligence caused or contributed to the event which brought about the injury or damages for which claim is made.

Therefore, a defendant may be negligent, yet not be at fault (and thus potentially liable) for the injuries or damages for which claim is made. The jury's verdict that none of the parties were at fault reflects a permitted interpretation of the jury instructions: The jury should have found Yellow Freight "negligent," but the jury was not compelled to find Yellow Freight at "fault."

In the pretrial order, the plaintiff claimed that her injuries included "cervical and lumbar strain, myofascial strain and injuries to both hands and both feet resulting in pain extending into the wrists and into the ankles. However, the most significant injury incurred by Ms. Harvey was a traumatic brain injury." While these claims appeared in the pretrial order, the plaintiff's case was almost exclusively presented to the jury under the theory that she was seeking compensation for brain damage caused by the collision. Throughout the entirety of the plaintiff's case, she did not seek compensation for any damages at the time of the collision or shortly thereafter.[3] The vast preponderance of evidence presented by plaintiff related only to the issue of whether or not the plaintiff had suffered brain damage.

In her motion for new trial, the plaintiff only identifies Exhibit 18E,[4] Exhibit 18J and the testimony of Dr. Rawcliffe (defendant's expert) as objective evidence of the fact that she suffered other injuries in addition to the alleged brain damage. This evidence was introduced by the defendant as part of its defense. The plaintiff did not introduce evidence of any damages she incurred at the time of the accident; the only damages and expenses that she claimed at trial were those incurred almost two years after the accident. From the approach taken by plaintiff, the jury could have reasonably understood that in order to recover damages, the plaintiff was required to prove by a preponderance of the evidence that she had suffered brain injury as a direct result of the collision.

Even if the jury had understood the plaintiff to be making a claim for "whiplash," the testimony of Dr. Rawcliffe, the defendant's expert, indicated that the "whiplash" required no medical care or treatment and that the injury healed due to the natural healing processes of the body and no evidence was offered supporting such claim. Clearly, the jury received no evidence concerning any expenses generated by treatment for the "whiplash" injury or any other damage suffered by plaintiff as a result of a "whiplash."

In any event, the issue as to the existence and extent of the plaintiff's injuries was clouded by the plaintiff's pre-existing bi-polar disorder, or manic depression. The defendant also introduced evidence that the plaintiff suffered from a somatization disorder. The jury could reasonably have attributed the plaintiff's subjective complaints to this disorder.

As to the issue of brain damage, evidence was introduced which indicated that the plaintiff had not suffered brain injury. Several physicians[5] were unable to identify any

---

3. Yellow Freight had already paid the plaintiff approximately $40,000 for damages to the U-Haul, the Jeep and other property, as well as for medical expenses occurring shortly after the accident. Evidence of these payments was not offered to the jury.

4. Defendant's exhibit 18E states in pertinent part: Cervical and lumbar strain with hand

strain bilaterally. I believe this will spontaneously resolve. I do not think she needs to do anything except rest and decrease her activity over the next several weeks.

5. Following the collision, Harvey, believing that she had suffered yet undiscovered injuries, visited several physicians. The results of those physi-

evidence of brain damage. While it is true that the plaintiff's own physicians testified that she had suffered brain damage as a result of the collision, evidence was introduced from which the jury could reasonably have found that the collision with Yellow Freight's truck had not caused brain damage. The jury could also have reasonably concluded that any problems currently suffered by the plaintiff were attributable to a pre-existing condition.

Significantly, the plaintiff, due to the nature of her alleged injury, was unable to introduce evidence of a CAT scan or an MRI scan to prove that she had suffered an orbital frontal cortex injury.[6] Therefore, Harvey attempted to prove brain damage by other methods. For example, the plaintiff purportedly failed a test for anosmia. Anosmia concerns the absence of the sense of smell. The inability to smell may be an indication of brain damage. When the plaintiff was initially checked by physicians for anosmia, there was no indication that her ability to smell was in any way impaired. At a later point in time, after the plaintiff may have been aware that the inability to smell was an indication of brain damage, she was unable to smell peanut butter in her left nostril.

Similarly, psychological tests performed on the plaintiff which supposedly demonstrated brain damage could have been discounted by the jury. For example, the efficacy of the "Tinker–Toy" test[7] was vigorously challenged by Yellow Freight. Specifically, Yellow Freight contended that the "Tinker–Toy" test was not a test accepted by the psychological community.[8]

It is also possible that the jury was influenced by other, non-medical, evidence which indicated that the plaintiff was not suffering from brain damage. The videotape depositions of the plaintiff's daughter and son-in-law indicated that the plaintiff, after the accident, was able to perform many daily functions. Their testimony indicated that plaintiff's inability to design doll dresses centered on her boredom with the business, rather than some physiological obstacle. At some point in time, the plaintiff took the doll design business away from her daughter and son-in-law.[9] Their testimony suggested that the plaintiff had taken back the business as a strategic maneuver to enhance her recovery from her then-pending suit against Yellow Freight.

The jury in this case correctly interpreted the instructions and their conclusion was a rational decision in light of the evidence and the case presented by the parties. The finding of "no fault" was clearly within the provence of the jury, and the court will not disturb that finding in this motion for new trial.

In the final analysis, the evidence was clear that Yellow Freight's driver was virtually the sole cause of the accident; the only evidence to the contrary concerned the possibility that the plaintiff was traveling less than 40 m.p.h., which was below the minimum speed limit on I–70. However, the evidence was highly disputed as to what injuries, if any, plaintiff suffered as a result of the collision. As the court views the case, plaintiff made the strategic decision to emphasize the alleged brain injury and basically ignored any other claims or injuries. The fact that the jury did not find the defendant at fault for any of the damages claimed by plaintiff does not entitle plaintiff to a new trial. No injustice was done by the jury's conclusion that no party was at fault.

cian's examinations are found in defendant's exhibits 18A through 18S.

**6.** There was testimony that an autopsy was the only way in which brain damage of the type allegedly suffered by the plaintiff could be proven.

**7.** The "Tinker–Toy" test involves placing a number of Tinker–Toys on a table, allowing the patient ten minutes to construct any object from the assorted pieces, followed by an evaluation of the object made by the patient. The plaintiff in this case was apparently unable to construct anything.

**8.** Yellow Freight did not, however, object to the introduction of that testimony at the time it was offered. See Fed.R.Evid. 703.

**9.** Their version of this event suggested that plaintiff had reneged on the deal.

IT IS THEREFORE ORDERED that the plaintiff's motion for new trial (Dk. # 220) is denied.

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

GLADYS VIRGINIA HARVEY,

Petitioner,

v.

HONORABLE SAM A. CROW,
District Judge,

Respondent.

No. 94–636

ORDER

Before BRORBY and KELLY, Circuit Judges.

This is an original proceeding in the nature of mandamus. Petitioner seeks: 1) leave to proceed in this court without prepayment of costs or fees and 2) an order granting her a new trial with a change of venue in case No. 87–CV–1205 in the United States District Court for the District of Kansas and a copy of the trial transcript.

Upon consideration thereof, it is ordered as follows:

1. The motion for leave to proceed without prepayment of costs or fees is granted;

2. The petition for writ of mandamus is denied.

Petitioner is attempting to use mandamus as a substitute for an appeal, which is improper. *Weston v. Mann (In re Weston),* 18 F.3d 860, 864 (10th Cir.1994). The time to appeal from the district court judgment has expired. Additionally, she is unable to establish entitlement to a free transcript under 28 U.S.C. § 753(f).

800

SENDER:
• Complete items 1 and/or 2 for additional services.
• Complete items 3, and 4a & b.
• Print your name and address on the reverse of this form so
that we can return this card to you.
• Attach this form to the front of the mailpiece, or on the
back if space does not permit.
• Write "Return Receipt Requested" on the mailpiece next to
the article number.

I also wish to receive the
following services (for an extra
fee):

1. ☐ Addressee's Address

2. ☒ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

Gladys Harvey
P.O. Box 9892
KC MO 64134

4a. Article Number
P 187 739 252

4b. Service Type
☐ Registered ☐ Insured
☒ Certified ☐ COD
☐ Express Mail ☐ Return Receipt for Merchandise

7. Date of Delivery
MAR 28 1995

5. Signature (Addressee)
Gladys V Harvey

6. Signature (Agent)

8. Addressee's Address (Only if requested
and fee is paid) MAR 28 1995

PS Form 3811, October 1990 ☆U.S. GPO: 1990—273-051

DOMESTIC RETURN RECEIPT

Chambers of
Sam A. Crow, Judge

March 21, 1995

Ms. Gladys V. Harvey
P.O. Box 9892
Kansas City, MO 64134

Re: Gladys V. Harvey v. Yellow Freight Lines, Inc. and
 Protective Insurance Company, No. 87-1205-C

Dear Ms. Harvey:

As you will recall, in the fall of 1990, I presided over the
trial of your claims against the defendant in *Harvey v. Yellow Freight
System, Inc.*, Case No. 87-1205-C. After a three week trial, the
jury returned a verdict in which they found none of the parties
at fault. On December 19, 1990, the court entered an eleven-page
memorandum and order denying your motion for a new trial. That
memorandum and order explained in detail that the jury's verdict
was reasonable, and therefore permitted, interpretation of the
evidence introduced at trial. Final judgment was entered in
favor of the defendant. No timely appeal to the Tenth Circuit
Court of Appeals was filed. From the court's standpoint, this
case was deemed closed.

Since 1990, it has become apparent that you are dissatisfied with
the jury's verdict and that you have sought through various
avenues to collaterally attack their decision. Subject to
certain limited exceptions which you have neither raised nor
appear relevant, *see* Fed. R. Civ. P. 60(b), final judgment from
which no direct appeal is taken is not subject to collateral
attack by the losing party. In short, a litigant is generally
afforded only one opportunity to prove his or her case. While
this may strike you as unfair, the finality of judgments is one
of the hallmarks of our judicial system.

Your efforts to collaterally attack the jury's verdict have in
part consisted of certain requests from the court. By a letter
dated May 17, 1994, I denied your request for a trial transcript
at no cost. On December 4, 1994, the Tenth Circuit entered an
order denying your petition for writ of mandamus. While these
requests for relief have been rejected on the merits, these

Ms. Harvey Page 2 March 21, 1995

actions by you are not the source of my concern. Instead, my concern centers on your harassment of the persons who sat as jurors in your case.

By a letter dated June 21, 1994, I responded to your request to the Clerk of the District Court in Wichita, Kansas, for the names and addresses of all of the persons who comprised the jury in your case. A copy of that letter is attached to this letter. In response, I provided you with the names and addresses of the jurors. In addition, I provided you with a copy of D. Kan. Rule 123. That rule precludes you, your attorney or your agents or employees from examining or interviewing, either orally or in writing, any of the persons who sat as jurors in your case. This rule of the District of Kansas is equally applicable to all parties appearing in this court.

Despite my June 21, 1994, letter, it is my understanding that you have since contacted at least one of the jurors in your case for the purpose of interviewing that person concerning his recollection of the case. No order of the court has granted you permission to contact any of the jurors. If you have contacted any of the persons who sat as jurors in your case for the purpose of interviewing them with regard to your case, you have committed an act of contempt against the court. Such acts of contempt are **criminal** in nature and are punishable, at my discretion, by either a fine or a term of incarceration in a federal prison.

This letter constitutes the final warning of the court: Do not contact, either orally or in writing, any of the persons who sat as jurors in *Harvey v. Yellow Freight System, Inc.*, Case No. 87-1205-C, for the purpose of examining or interviewing them with regard to that case without consent of this court. You, like all parties, are expected to abide by the rules of this court. The fact that you are apparently disgruntled with the jury's verdict is not a valid reason for violating the rules of this court.

Despite its plain language, you have apparently violated D. Kan. Rule 123. Nevertheless, based upon the circumstances of this case, and because you are now proceeding without the benefit of counsel, I have, in the exercise of my discretion, chosen to provide you with this final additional written warning. I advise you, however, that future transgressions of D. Kan. Rule 123 will not be tolerated. In the future, if I am satisfied that you have violated D. Kan. Rule 123 after this final warning, I will have no option but to refer this matter to the United States Attorney for the District of Kansas for the purpose of commencing criminal contempt proceedings against you pursuant to Fed. R. Crim. P. 42(b). A copy of Fed. R. Crim. P. 42 is attached to this letter.

*802*

In addition, you will note that I have sent a copy of this letter to each of the persons who sat as jurors in your case. I will request each of the jurors to contact me if you again violate D. Kan. Rule 123. A copy of this letter will also be placed in the court file in Case No. 87-1205-C.

I admonish you to obey the rules of this court.

Yours very truly,

Sam A. Crow
U.S. District Judge

SAC:bjr

Enclosures 3

cc: To All Jurors

April 16, 1995

US District Dourt
District of Kansas
444 Southeast Quincy
Topeka, Kansas 66683

Judge Sam A. Crow

Dear Judge Crow,

Thank you for your letter of March 21.

You mention Rule 60 (b). See enclosed letter from Attorney David White regarding my filing this Rule. Since December I have tried to find a lawyer who will file this for me. See letter from Attorney Jerry Levy who gives his reason for refusing, as have several others.

What is the purpose of having rule 60(b) (6) if no judge will rule in my favor?

It happens that I did not present my case well to David White as I have ammple medical evidence proving my incompetency during the lawsuit in .question. I haveneuropsychological testings from two major medical center, Iowa Methodist and Kansas Univ Medical Center saying my IQ level has dropped from 98% to 85%. I have Dr Varney, staff psychologist for the Veterans Hospital in Iowa City who shows a drop in IQ from 133 to 112..And most important two doctors for Social Security ONE MONTH after I lost the lawsuit gave me complete disability and part of their findings was severe brain damage, including a drop in IQ from 132 to 114.

I've included a quote from Oliver Wendell Holmes regarding legal distinctions. It would seem to me that Social Security is as unprejudiced as you can find regarding guidelines and I filled ALL their guildelines for having severe brain damage.

In addition I have kept diaries continually from a few months after the accident and there would be no difficulty in a competent psychologist seeingsthem and saying I was not competent. And my own testimony, had I been allowed transcripts would prove I was not testifying in the capacity of a person with a proven IQ of the top 2% which is the genius-level.

Then there is Dr. O'Connor's tests which showed deficits he tried to blame on my being menopausal and manic depressive. I was on Lithium continually so there were no manic-depressive symptoms. I have tests that prove this.

Finally there is the fact that jury members told my lawyer following the trial that they believed I had brain damage. That means they listened to the evidence and at least some of them were convinced of that fact. That is what I have been asking them about. This was NOT part of the trial, this was an opinion they volunteered after they had been dismissed. I believe I have a right to know about this.

I am not giving up yet, Judge Crow, but you may be heartened to know that the brain damage symptoms are getting worse and I may not be able to continue my pursuit of justice any further. I have 400.00 saved up and I will see a lawyer tomorrow to find out where I file Rule 60(b)(6).At least I have been granted the right to file In Forma Pauperis. I'm sending my picture because I don't want to be some faceless person that you can't relate to. I'm a real person searching for justice. Gladys Harvey

Judge Crow, I read your letter again in which you admonish me repeatedly with what will happen if I break the rules regarding the jury members.

Do you realize that when the justice system does what it did to me I simply do not care what YOU do to me now. If I was to be sent to jail the only problem would be making sure my five cats were taken care of. well, four as one seems to have departed when the storm blew the screen off the window and hasn't returned.

Your justice system has put me in the same position criminals get in when they commit crimes because it doesn't seem to matter....my brain is deteriorating and I'm seeing a neurologist nearly ever month. Physically I'm going downhill rapidly as you can't get slammed into with 22 tons and have no effects on your body.

Judge Crow, I symply do not care if I go to jail or not. I would have to be put on limited work detail and if they would let me read all the time I'd be happy as a clam. I'm the picture of a Village Idiot now and have no ambition except to win this case against Yellow Freight. I am not now physically or mentally capable of doing anything with the money if I won.

Jail would be nice as I would be taken care of. Topeka has a branch of the Head Injury Association and you would be well advised to attend a few sessions and listen to other survivors horror stories. Did you know they estimate that at least 25% of the homeless people are brain damaged. Last week at Truman Medical Center there was one woman who lived on the streets for 5 years before she got help.

However, I won't write the jury members again because they aren't going to tell me anything.

Gerry Spence told me in a letter a few years ago not to give up, that justice is hard. But in his book he said you don't get justice, that it is decided by conporations, insurance companies and judges.

Mensa didn't of course , kick me out when I dropped from 98 to 82% when I took my Mensa test again. So I put this out and I'd like to point out the quote by John Gardner on the front.
Back

In your "Denial" you said only an autopsy would show if I had brain damage. An MRI in August showed scar tissue in brain, brain stem + spinal cord. This is proof that something very serious happened to my brain earlier.